STATE v. GODWINSVILLE AND PATERSON MACADAMIZED
ROAD COMPANY.

1. Duties required of an incorporated company are in the nature of con-
   ditions annexed to the grant of the franchise. Such conditions may
   be waived or released, or a new grant made, free therefrom, but the
   intent so to do must be expressly declared or plainly to be inferred
   from some legislative act.
2. The condition contained in defendant's charter requiring the turnpike
   road thereby authorized to be improved in a certain mode before tolls
   could be exacted, held to have been discharged by a supplementary
   act, giving power to take tolls in a new mode inconsistent with that
   previously prescribed, and plainly justifying the inference that there
   was a legislative intent either to acknowledge the previous perform-
   ance of the conditions or to waive the same.

On case certified from the Passaic Oyer and Terminer.

Argued at June Term, 1882, before BEASLEY, CHIEF
JUSTICE, and Justices DIXON, MAGIE and PARKER.

For the state, E. Stevenson.

For the defendant, J. W. Griggs.

The opinion of the court was delivered by

MAGIE, J.   The indictment in this case charged defendant
with illegally erecting and maintaining, on an ancient and
common highway in Passaic county, called the Goffle road, an
obstruction in the shape of a gate across the road.   The erec-
tion was charged to have been on April 1st, 1881, and the
maintenance from that date to the time the indictment was
found.

On the trial it appeared that the gate complained of was
erected in 1869, and had been maintained by defendant since
that time.   It was admitted that the Goffle road, on which
the gate stood, was a road on which defendant had been

authorized to construct a turnpike and macadamized road, by the provisions of its act of incorporation, approved April 4th, 1867. *Pamph. L., p.* 692. The act, which the state put in evidence, further authorized defendant to erect gates and take tolls at a certain rate per mile whenever the road was completed according to the requirements of the act. Authority was also given to erect a gate and take such tolls whenever two consecutive miles were thus completed.

By a supplement approved April 2d, 1868, (*Pamph. L., p.* 736,) also put in evidence by the state, defendant was authorized to erect gates and exact tolls at the rate fixed by the original act, whenever the road was graded as required by that act, and " put in good order and repair for travel thereon."

The contention of the state was, and it was permitted to produce evidence tending to prove, that at the time the gate in question was erected the road had not been put in the condition required by those acts. It was insisted by the prosecutor that he thus established the illegal erection of the gate, and that consequently its maintenance during the period charged in the indictment was unlawful.

At the close of the state's case, defendant asked the Court of Oyer and Terminer to direct an acquittal on the ground that if the road was thus shown not to have been put in the condition required for the erection of the gate, yet that by a further supplement approved April 4th, 1872, (*Pamph. L., p.* 1300,) which the state had put in evidence, the authority to maintain this gate had been recognized or granted, so that its maintenance thereafter was not unlawful. This request was refused.

The court further held that if defendant had not, at the time of the erection of the gate, put the road in the required condition, yet it might defend itself by proof that it had done so subsequently and before the time covered by the indictment. Defendant therefore produced evidence as to the condition of the road, both at the time of the erection of the gate and within two years thereafter, to which time it limited its claim to have performed the requirements of the acts.

Defendant also put in evidence an act approved March 21st, 1874, entitled " An act to authorize the board of chosen freeholders of the county of Passaic to purchase and vacate certain turnpikes in said county," &c., supplement thereto, approved April 5th, 1875, and claimed that they afforded a defence to the indictment.

Defendant again claimed a defence under the act of 1872 above referred to.

Both these defences were overruled, and the case was left to the jury upon the question whether the road, or two consecutive miles of it, whereon the gate stood, had been put in the condition required by the acts, either at the time the gate was erected or within two years thereafter. If not, the jury was instructed that the indictment was sustained.

Defendant was found guilty, and a rule to show cause why the verdict should not be set aside and a new trial granted was allowed, and has been certified to this court for its advisory opinion whether said rule should be made absolute or discharged.

The case thus certified presents some novel questions.

Defendant was found guilty of maintaining a gate across an ancient and common highway. The evidence was that the gate was maintained upon a road which defendant occupied by legislative authority as its turnpike road, on which, under certain circumstances, it was entitled to maintain such a gate. If the indictment had charged according to the facts, that defendant maintained a gate across its turnpike, it would seem to fall short of charging an indictable offence, unless it further alleged that the circumstances justifying the maintenance of the gate did not in fact exist. If such an allegation was necessary, the prosecutor in this case would have averred that the gate had not been legally erected in 1869, and would have supported the allegation by proof that the road had not then been put in the condition required by the acts. Such was in fact the proof resorted to and solely relied on for conviction. It was in fact the proof of a criminal act committed eleven years previous.

State v. Godwinsville and Paterson Road Co.

These facts suggest at once such questions as these, viz.: Whether, when defendant has a right to do the act complained of as criminal, under legislative authority, upon the existence of certain facts, a criminal offence is charged without an allegation negativing the existence of such facts? Whether the act of maintaining a gate under the circumstances disclosed in this case has in it any element of criminality apart from the criminality of the act of erection, and whether the act of maintaining can be indicted and prosecuted when the proof depends on the criminal act of erection, a prosecution for which has been barred by the statute of limitations respecting criminal offences? Some of these questions were not argued, nor do I find that they have been discussed or decided elsewhere. For these reasons I do not think it desirable to express any opinion upon them, since there is in the case a ground on which I am clear the rule ought to be made absolute.

The conviction must stand, if at all, on the ground that defendant had not put the road in the condition required by the original act of incorporation and the supplement of 1868.

Duties required by the act of incorporation are in the nature of conditions annexed to the grant of the franchise. Such conditions may be precedent or subsequent, and like other conditions may be waived or released by the power granting, or a new grant· may be made free from any limitation or condition by the same power. In accordance with well-settled rules, the intent to waive or release conditions or to make such a new grant must be expressly declared or plainly to be inferred from some act of the granting power. *London* v. *Vanacker*, 1 *Ld. Raym.* 496; *Angell & Ames on Corp.*, § 777, and cases in the notes to the ninth edition; *Lumbard* v. *Stearns*, 4 *Cush.* 60; *People* v. *Kingston, &c., Turnpike*, 23 *Wend.* 193; *People* v. *Manhattan Co.*, 9 *Wend.* 351, 382.

The contention of the state therefore was that the company had not performed a condition annexed to the grant of the right to erect this gate, and precedent thereto.

The contention of the defendant was that such condition was either waived or released, or a new grant of power made, and that the legislative intent so to do appears either in the supplement to defendant's charter passed in 1872, or in the acts of 1874 and 1875, which authorized the purchase of this turnpike by the county authorities.

Upon examination, the last-named acts appear to simply give power to purchase and sell the rights and franchises of defendant. What those rights were, or whether they included the right to erect or maintain this gate, nowhere plainly appears. There is therefore nothing in them justifying the conclusion drawn by defendant. It is to the act of 1872 alone that it can appeal.

It appeared by the evidence that prior to the erection of the gate, defendant had at least done something toward putting the road in the condition required by the acts as a prerequisite to the erection. By the erection of the gate in 1869, the defendant made an open and public claim that it had then completely performed the condition precedent.

While matters were in this state the legislature passed the supplement of 1872. The first section relieved defendant of the duty of macadamizing the road, which had been imposed by the original act.

The second section used the following language: "That it shall and may be lawful for the said company, at all times, to take and receive of and from every person or persons who shall pass through their gates in traveling, the following rates of toll," &c., &c. It is to be observed that the rates previously prescribed were fixed by the mile, and so had reference to the distance traversed by the traveler. Moreover, tolls could not before be exacted until two consecutive miles had been improved in the manner prescribed by the acts. The rates fixed by this section were gross sums for passing through the gates, without reference to the distance traversed. Nothing is expressed in regard to the improvement before required.

The third section was a repealer of all inconsistent parts of

the original act. If it did not appear that any gate had been erected upon this turnpike when this supplement was passed, I should find it very difficult to give definite meaning to the language of its second section, giving a right to take tolls at their gates. For if it relates to gates not then erected, it is manifest that it leaves entirely uncertain whether the gross sum fixed was to be a charge for travel over the whole road, or whether it could be exacted at as many gates as the company should choose to set up. When we consider the fact that at that time this gate at least had been erected, it seems plain that the language used in the second section has direct reference to gates then existing upon the road and to none other. For under such circumstances, it could not be pretended that the company could thereafter set up other gates to exact this toll.

The grant of the power of taking the new rates of toll was therefore given by this section to be exercised at the then existing gates. I think no violence would be done this language in construing it to be a new grant of power free from the limitation or condition previously imposed upon the power to take tolls. But if this grant be rather a modification of an existing power than a grant of new power, I still think the act evinces a legislative intent to dispense with the previously imposed condition. I find such intent from the fact that the rates now fixed were gross sums not graduated by the distance traveled, and the fact that they were to be exacted at then existing gates, and not at gates set up from time to time, in proportion as the road was improved. From these facts I think the inference irresistible that the legislature either intended to acknowledge the previously imposed condition had been completely performed as claimed, or to waive its performance. The grant therefore involves a discharge of the condition either by waiver or release. The existing gates were thus recognized and legalized. Their continued existence was made essential to the exaction of tolls. Their maintenance was thereafter not illegal. The act of 1872 therefore afforded a complete defence to the indictment, and having

been excluded from consideration at the trial, the verdict ought not to stand.

The Court of Oyer and Terminer should be advised that the rule to show cause should be made absolute.